UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| HOLLY POIRIER, | : | CASE NO. 03-42421-JBR |
| DEBTOR | : | |
| HOLLY POIRIER, | : | |
| PLAINTIFF, | : | |
| v. | : | ADVERSARY PROCEEDING |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | : : | NO. 05-4063 |
| DEFENDANT. | : | |

**ORDER ON REQUEST OF THE DEFENDANT, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, FOR THIS HONORABLE COURT TO TAKE JUDICIAL NOTICE AT THE TRIAL OF THIS MATTER**

This matter came before the Court on the Request of the Defendant, Educational Credit Management Corporation, For This Honorable Court to Take Judicial Notice at the Trial of This Matter [#10] and ECMC's Supplemental Exhibits [#14]. Specifically Educational Credit Management Corporation ("ECMC") requests that the Court take what ECMC describes as "judicial notice under Federal Rule of Evidence 201" of 29 enumerated requests and the various exhibits attached thereto as well as two supplemental exhibits in this adversary proceeding to determine whether the Debtor's student loan is dischargeable.

Before addressing which of the enumerated "facts" the Court will judicially notice, it is important to distinguish between judicial notice of adjudicate facts, which is governed by Fed. R. Evid. 201, and judicial notice of the law, which is generally

governed by the rules of procedure. Although ECMC frames its Request as judicial notice of adjudicative facts, the Request seeks judicial notice of both law and adjudicative facts.

Courts routinely take judicial notice of the law as set forth in federal and state constitutions, statutes, and court decisions. *See generally Getty Petroleum Marketing, Inc. v. Capital Terminal Co.,* 391 F.3d 312, 321 (1st Cir. 2004)(concurring opinion by Judge Lipez). Moreover, judicial notice of the federal agencies' regulations that are required to be published in the Federal Register *must* be judicially noticed. 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number.") A number of ECMC's requests fall directly under this category. Indeed much of what it asks the Court to notice is contained within the statutes and regulations governing various student loan programs, including repayment options. The relevant regulations of the Department of Education ("DOE") have been published in the Federal Register. Notice of the foregoing law is appropriate; it is the kind of notice courts take virtually everyday. It is not, however, to be confused with judicial notice of adjudicative facts.

Judicial notice of adjudicative facts is governed by Fed. R. Evid. 201. The Court is required to take judicial notice of adjudicative facts if a party requests it and supplies the Court with the necessary information *provided* that the fact to be noticed is "not subject to reasonable dispute." That a fact is not subject to reasonable dispute can be established in one of two ways: it is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. It is

2

the latter which ECMC argues supports a finding that the facts it is seeking to have judicially noticed, including the ultimate finding of what the Debtor's payments would be under each of the four repayment plans available through the William D. Ford Direct Loan Program.

The Court will take judicial notice as requested except and to the extent discussed below.

Request Nos. 2 and 3 will be addressed together and read as follows:

**2. As a department of the United States Federal Government, the DOE maintains its own website which may be accessed at www.ed.gov.**

**3. ECMC submits that the accuracy of the information set forth within the DOE's own website may not be reasonably questioned and ECMC submits that this Court can readily take judicial notice of the DOE's website. See also Federal Rule of Evidence 902(5).**

Although Exhibit A, which the Request identifies as a copy of the DOE webpage, may be an accurate representation of the DOE's website at the time the exhibit was printed, the website indeed changes. Although many of the links remained unchanged, the home page as viewed by the Court on 7/27/2006 is not identical to that attached by ECMC as Exhibit A, which appears to have been printed on 2/17/2006. The Court will take judicial notice that the DOE maintains a website at www.ed.gov., albeit that Internet address provides access to a DOE home page that is not fixed. Taking judicial notice of the "information" on the entire DOE website, however, is more problematic.

The Court acknowledges that courts take judicial notice of federal agencies'

3

websites and the information on them, treating these websites as public records. "Courts have defined a public record to include published reports of administrative bodies. The fact that an agency report is 'published' on the world wide web does not affect the Court's ability to take judicial notice of the contents of that report." *In re Wellbutrin SR/Zyban Antitrust Litigation*, 281 F. Supp.2d 751, 755 (E.D. Pa. 2003)(taking judicial notice of certain drugs on FDA's list of new and approved drugs). *See also McLaughlin v. Volkswagen of Am., Inc.*, 2000 WL 1793071, at *1 (E.D.Pa. 2000)(taking judicial notice of National Highway Traffic Safety Administration's website description of vehicle recall); *In re AgriBiotech Sec. Litig.*, 2000 WL 1277603, at *2, 2000 U.S. Dist. LEXIS 5643, at *4-5 (D.Nev. 2000) (taking judicial notice of official government documents available on the world wide web). Indeed, bankruptcy courts dealing with student loans cases appear to take judicial notice of the Department of Education's website, including the William D. Ford Direct Loan repayment program, the loan calculator, and the actual amounts debtors would be required to repay using the loan calculator, without actually discussing the issue of judicial notice. *See, e.g., Cota v. U.S. Dep't of Education (In re Cota)*, 298 B.R. 408 (Bankr. D. Ariz. 2003)(taking judicial notice of Department's interactive loan calculator and amount debtor would be required to pay).[1]

Taking judicial notice of an agency's website and the information on it appears to

---

[1]In *Cota* it appears that the Department did not offer any witnesses. In fact the Court stated that "ECMC's counsel did not know which of the William D. Ford programs the debtors might qualify for, but suggested that they would probably be eligible for the Income Contingent repayment Plan (IRC). ECMC's counsel further suggested that under the IRC, due to the large number of dependants, the Debtors would probably not currently have to make any payments on the Student Loan Obligation." *Id.* at 414.

4

be a relaxation of Fed. R. Evid 902[2] because, as noted, the home page, at least in this case, is not a constant. Moreover the DOE's website has links to many "documents" which are still part of the DOE website but contain more than can reasonably be called "official records," "reports," or a "publication issued by public authority." The website contains information on a wide range of topics such as emergency planning for a pandemic flu, teaching aids, surveys to rate user satisfaction with the DOE website, advice about career colleges and technical schools in addition to information about educational loans. The array of information is seemingly endless. Much of the material cannot be reasonably described as public record or official publication. *See, e.g.,* http://www.ed.gov/news/opeds/edit/index.html?src=ln, a section of the DOE website at which various opinion pieces, editorials, and letters to editors are republished.

Given the breadth of Request No. 3, the Court denies this Request without prejudice.

---

[2]Rule 902 deals with self-authentication and provides in part:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:...

> (4) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilation in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of the rule or complying with any Act of congress or rule prescribed by the supreme Court pursuant to statutory authority.
>
> (5) Official Publications. Books, pamphlets, or other publications purporting to be issued by public authority.

5

**Request No. 8. The DOE's website sets forth detailed information about the Ford Program.** (ECME cites www.ed.gov/offices/OSFAP/DirectLoan and attached a copy of what it identifies as the DOE web page with the Ford Program information as Exhibit B).

The DOE's website at www.ed.gov/offices/OSFAP/DirectLoan provides information about the Ford Program. Whether it's "detailed" may be a matter of what ECMC means by "detailed." The Court will take notice that the DOE's website provides information about the Ford Program without determining whether such information is "detailed."

**Request No. 10. Congress established the calculations for determining monthly repayment amounts and terms for the Ford Program Standard Plan, Extended Plan, Graduated Repayment Plan, and Income contingent Repayment Program at 34 CFR 685.208 and 34 CFR 685.209.**

Congress did not establish the "calculations." Congress established the DOE and the parameters set forth in 20 U.S.C § 1087e(d) but vested the responsibility for drafting regulations that may affect the calculation of the monthly repayment amount in the Secretary. *See, e.g.,* 20 U.S.C. § 1087e(e)(5)("The balance due on a loan made under this part that is repaid pursuant to the income contingent repayment shall equal the unpaid principal amount of the loan, any accrued interest, and any fees such as late charges, assessed on such loan. *The Secretary may promulgate regulations limiting the amount of interest that may be capitalized on such loan, and the timing of such capitalization.*)(Emphasis added).

6

Requests Nos. 13, 14, and 15 ask the Court to take notice of the interactive loan calculator which may be accessed on the DOE's website.

**Request No. 13. The DOE's website provides a calculator that automatically calculates the monthly repayment amounts and terms for the four consolidation options offered under the Ford Program and as required by Congress in 34 CFR 685.208 and 685.209. See http://www/ed.gov/offices/OSFAP/DirectLoan/calc.html**

**Request No. 14. At the top of the DOE calculator web page a borrower inputs the type of student loan that the borrower has, amount due on the loan, and the interest rate on the loan, and then clicks "Add" on the webpage, at which point the loan information is entered into the DOE webpage for calculation.**

**Request No. 15. The borrower then clicks"Consolidate Loan Amount" which is in the middle of the DOE web page, at which point the DOE calculator provides monthly payment amounts and terms for consolidation under the Ford Program Standard Plan, Extended Plan, and Graduated Payment Plan.**

Assuming that a debtor knows and inputs all of the necessary information, following the above steps yields numbers that purport to be the repayment terms under the repayment plans. The repayment terms obtained via such method, however, come with the following caveat: "Calculations are estimates. Values may not reflect the actual amount computed by the direct loan servicing center." Thus to the extent ECMC is asking the Court to take judicial notice that the repayment terms obtained by using the interactive calculator available on the DOE's website are accurate, the Request is

7

denied.  The Doe's website, itself, acknowledges such numbers are merely estimates.

**18.  The payment amounts and percentage factors for determining the Income Contingent Repayment Option are adjusted annually by the United States Department of Education and also factor in the annually adjusted Federal HHS Poverty Guidelines.  See 34 CFR 685.209.**

There are annual adjustments.  ECMC has not demonstrated that the loan calculator is updated to reflect the annual adjustments nor when such adjustments occur and the Court will not assume that the interactive loan calculator is current, especially in view of the website's caution that calculations obtained using the interactive calculator are estimates.

**Request No. 22.  The Debtor in the case at bar has one (1) Federal Consolidation loan, which loan is eligible for consolidation in the DOE Ford Loan Program.  See DOE website http://www.ed/gov/offices/OSFAP/Direct Loan/calc.html (Exhibit F) and click "Choose Loan Type" at the top of the web page which confirms that a Federal Consolidation loan is eligible for consolidation with the Ford Program.**

The Debtor does not allege what kind of loan it is in the complaint.  The Joint Pretrial Memorandum states: "ECMC holds one Federal consolidation loan of the Plaintff...."  Moreover the attachment which ECMC states is a copy of the relevant promissory note is illegible.  The Debtor's "Application/Promissory Note Consolidation Loan," which is the first page of Exhibit H simply refers to the loans the Debtor is consolidating as "all CityBank Loans."

8

Section 1087e designates loans "under this part," that is the William D. Ford Direct Loan Program as:

Federal Direct Stafford Loans;

Federal Direct PLUS Loans;

Federal Direct Consolidation Loans; and

Federal Direct Unsubsidized Stafford Loans.

Because the word "direct" is missing from the description of the loan the Pretrial Memo, ECMC has failed to supply the Court with the information necessary to take judicial notice of this fact as required by Fed. R. Evid. 201 and thus the Request is denied.

**Request No. 23.  A copy of the Debtor's Federal Consolidation loan promissory note is attached hereto as Exhibit H**

Exhibit H is illegible.  The Request is denied.

**Request No. 24.  Per 34 CFR 685.220 (b) (15) a Federal Consolidation Loan is eligible for consolidation into the Ford Program.  34 CFR 685.220 is contained within the Federal Register at 59 FR 61690, Dec. 1, 1994.  Redesignated and amended at 64 FR 58969, 58970, 59044, Nov. 1, 1999; 65 FR 37045, June 13, 2000. Redesignated at 65 FR 65629, Nov. 1, 2000, as amended at 66 FR 34765, June 29, 2001; 67 FR 67082, Nov. 1, 2002; 68 FR 75430, Dec. 31, 2003.**

Per 34 CFR 685.220(b)(15) a Federal Consolidation Loan is eligible to be consolidated into a Direct Consolidation Loan and thus ECMC's statment of the law, as far as it goes, is correct.  Per 34 CFR 685.220(c)(3), a Federal Consolidation Loan is also eligible to be consolidated into a Direct Unsubsidized Consolidation Loan and a Direct Subsidized Consolidation Loan if certain eligibility criteria are met.

**Request No. 26.  As of April 14, 2006 the Debtor owed $70,385.54, on her**

9

**ECMC held student loan, with a per diem of $14.57.** (ECMC attaches as Exhibit J a one page document with no letterhead and is of unknown origin.)

In the Pretrial Memo, the Debtor reserves the right to challenge the amount ECMC claims is owed. In her trial memo the Debtor argues the amount owed as $69,864.59. The Court will not take judicial notice of the amount of the loan because Fed. R. Evid 201 is not satisfied.

**Request No. 27. Per the information provided herein by the Debtor, the Debtor is not married, has a total family size (including herself) of two, and had a taxable income of $240.00 a month, amounting to an approximate annual adjusted gross income of $2,880,00.**

ECMC cites to Debtor's responses to Interrogatories, attached as Exhibit K, as support for this finding. The Debtor's Answer 3(E) states that she earned "$60 weekly (2005)...." She does not state how many weeks she worked. Therefore the Court cannot assume that annualizing her weekly income gives an accurate indication of what her annual adjusted gross income was and cannot take judicial notice as ECMC has not met its burden under Fed. R. Evid. 201.

**Request No. 28. Entering the information concerning the loan amount and the Debtor into the DOE website calculator produced the attached DOE repayment schedule for the Debtor's student loans under the Ford Program Standard Plan, Extended Plan, Graduated Repayment Plan, and Income Contingent Repayment Plan.**

ECMC attaches its calculations as Exhibit L. The calculations are meaningless

as they are based on unsubstantiated premises about the Debtor. It may be that ECMC will be able to establish the necessary information at trial but that information is not currently before the Court.

**Request No. 29. According, ECMC requests that at the trial of this matter this Honorable Court take judicial notice of the: 1) DOE produced repayment schedule for the Debtor's payments under the Ford Program; 2) the existence of the United States Department of Education as a department of the United States Federal Government; 3) the website for the United States department of Education; 4) the William D. Ford Direct Loan Repayment Program as enacted by Congress pursuant to 20 U.S.C. § 1087a, et seq. and contained with [sic] the code of federal regulations at 34 CFR 685, sections 685.100 through 402; 5) any matter referenced herein that is contained within the Federal Register; 6) the federal 2006 Department of Health and Human Services (HHS) Poverty Guideline; and 7) all of the attachments hereto as this Honorable Court deems proper.**

For the reasons set forth above the Court will not take judicial notice of 1), and, with respect to 7), will not take judicial notice of the attachments which purport to accurately reflect the amounts the Debtor would pay under any of the four repayment plans available under the William D. Ford Loan Program.

Following the filing of its Request, ECMC filed its Supplemental Request asking the Court to take judicial notice of the following two "facts."

**Request A. Exhibit M is a United States Department of Education produced repayment schedule in which the Debtor's adjusted gross income is $8,133.00**

11

**and shows an income contingent repayment figure of zero (-0-) dollars per month.**

**Request B. Exhibit N is a United States Department of Education produced repayment schedule in which the Debtor's adjusted gross income is $13,000 and shows an income contingent repayment figure of five ($5.00) dollars per month.**

ECMC does not identify who at the DOE produced Exhibit M but it appears the exhibit was done using the website's loan calculator. ECMC apparently bases these new calculations on statements in the Debtor's trial memorandum that her 2004 income was approximately $8,133.00 and the her 2005 income was approximately $13,000, and the list of the Debtor's monthly expenses. income was approximately 2005. As with the use of her 2004 income, there is nothing to say that the income is adjusted. For the reasons set forth above, including the fact that the principal balance is in dispute, ECMC has not met its burden under Fed. R. Evid. 201 and thus the Court will not take judicial notice of these calculations.

*/s/ Joel B. Rosenthal*

Dated: August 1, 2006         _____
                              Joel B. Rosenthal
                              United States Bankruptcy Judge

13

Untitled (17).max